Dennis E. OBERLOH, et al.,
Respondents (A08–80),

Denny Dean Prescott, Respondent
(A08–81),

v.

Loren JOHNSON, Appellant.

Nos. A08–0080, A08–0081.

Court of Appeals of Minnesota.

July 7, 2009.

**374**

Kevin K. Shoeberg, Kevin K. Shoeberg, P.A., Woodbury, MN, for respondents.

William J. Toulouse, Quarnstrom & Doering, P.A., Marshall, MN; and Steven D. Sandven, Steven D. Sandven Law Office, Sioux Falls, SD, for appellant.

Heidi A. Drobnick, Woodbury, MN; and Daniel S. Press, Van Ness Feldman, Washington, DC, for amicus curiae Lower Sioux Indian Community.

Considered and decided by STONEBURNER, Presiding Judge; BJORKMAN, Judge; and MUEHLBERG, Judge.

## OPINION

MUEHLBERG, Judge.*

In this consolidated appeal arising out of two defamation suits against a tribal treasurer, appellant argues that the district court erred by denying summary judgment with respect to his sovereign immunity and absolute privilege defenses. Because appellant is entitled to invoke sovereign immunity for conduct arising out of his official authority as tribal treasurer, we reverse.

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

In 2007, while serving as treasurer of the Lower Sioux Indian Community[1] (the tribe), appellant Loren Johnson mailed a series of newsletters to tribal members editorializing about financial matters concerning the tribe. The letters were sent to members of the tribe on the reservation, and outside the reservation in Minnesota and in other states. Each newsletter was entitled "Treasurer's Report" and was printed on tribal stationery. Johnson stated in the newsletters that his purpose in writing was to promote a more transparent tribal government. The newsletters made allegations about business relationships that existed many years earlier between the tribe and respondents Denny Prescott, an enrolled member of the tribe, Dennis Oberloh, a nonmember, and Oberloh and Associates, Ltd., a Redwood Falls, Minnesota, accounting firm owned by Oberloh. Respondents assert that the allegations are defamatory. Johnson alleged in the newsletters that Prescott and Oberloh were both shareholders and officers of Municipal Capital Corporation (MCC), a company that Johnson said had profited by financing loans to the tribe's casino at inflated interest rates, and that they conducted a "racket." Johnson also informed members that the tribe would no longer obtain accounting services from Oberloh and Associates, Ltd., due to a purported conflict of interest. Prescott and Oberloh deny that they owned or were officers of MCC and they further deny the existence of any conflict of interest. They also allege that before the letters were sent, the tribe's own attorney investigated the allegations and reported to the tribe that Ob-

---

1. The Lower Sioux Indian Community is a federally recognized Indian tribe located near Morton, Minnesota. *See Klammer v. Lower Sioux Convenience Store,* 535 N.W.2d 379, 380 (Minn.App.1995).

erloh and Prescott had no interest in MCC.

Respondents subsequently sued Johnson, claiming that the allegations contained in the newsletters were false and defamatory. Johnson moved to dismiss the suits for lack of jurisdiction and failure to state a claim upon which relief can be granted. In asserting lack of jurisdiction, Johnson claimed that the suits are essentially claims against the tribal government, because he was acting within the scope of his authority as tribal treasurer when he mailed the newsletters. Johnson also asserted that as tribal treasurer, he is immune from liability under the doctrines of sovereign immunity, qualified immunity, official immunity, and absolute privilege.

After a hearing, the district court denied the motions, determining that, at a minimum, it could exercise jurisdiction for purposes of determining whether Johnson was acting within the scope of his authority as tribal treasurer when he published the newsletters. The district court further held that respondents' claims were not barred by qualified and official immunity, and refused to grant summary judgment on the basis of sovereign immunity or absolute privilege, because genuine issues of material fact existed as to whether Johnson satisfied the elements of these defenses. Johnson filed notices of appeal in both cases, and they were consolidated for review.

## ISSUE

Does the tribe's sovereign immunity bar the claims by respondents against Johnson?

## ANALYSIS

■ Generally, an order denying a motion for summary judgment is not appealable unless the district court certifies the issue presented as important and doubtful. Minn. R. Civ.App. P. 103.03(i). But orders denying dismissal based on immunity or jurisdictional grounds are collateral orders subject to immediate review because they fall within "that small class which finally determine claims of right, separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 833 (Minn.1995) (quotation omitted).

On appeal from summary judgment, this court determines whether the evidence, when "viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008) (quotation omitted); *see also* Minn. R. Civ. P. 56.03 (setting forth summary judgment standard). If, upon consideration of all evidence in the record, there are no genuine issues of material fact and either party is entitled to judgment as a matter of law, the court must order summary judgment. Minn. R. Civ. P. 56.03.

■ Johnson contends that the district court erred by refusing to grant him summary judgment on his sovereign immunity defense. Under the doctrine of tribal sovereign immunity, Indian tribes are immune from suit and may not be sued absent an express waiver of immunity by the tribe or Congress. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–59, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). "Indian tribes enjoy immunity because they are sovereigns predating the Constitution, and because immunity is thought necessary to promote federal policies of tribal self-determination, economic development, and cultural autonomy." *Gavle v. Little Six, Inc.*, 555 N.W.2d 284, 292 (Minn.1996)

(quotation omitted). Tribal sovereign immunity extends to individual tribal officials acting in their official capacity and within the scope of their authority. *Hegner v. Dietze*, 524 N.W.2d 731, 735 (Minn.App. 1994). The burden of establishing immunity from suit is on the party asserting the defense. *Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn.1997); *Christopherson v. City of Albert Lea*, 623 N.W.2d 272, 275 (Minn.App.2001). "Whether a suit is barred by a tribe's sovereign immunity is an issue of law that this court must determine de novo." *Otterson v. House*, 544 N.W.2d 64, 66 (Minn.App.1996), *review denied* (Minn. Apr. 26, 1996). Sovereign immunity extends to tribal officials acting within the scope of the tribe's sovereign powers. *Otterson*, 544 N.W.2d at 66.

The district court found that genuine issues of material fact exist as to whether Johnson was acting within the scope of his authority because several affidavits were submitted by tribal members alleging that Johnson's newsletters were not sent within the scope of authority or normal course of business of a tribal treasurer, and the tribal bylaws do not clearly indicate whether the tribal treasurer is entitled to communicate with members regarding financial matters.

We disagree. The affidavits submitted by respondents are unpersuasive because they contain mere expressions of opinion about the treasurer's scope of authority, do not address the tribe's sovereign power, and are unsupported by any legal authority. *See id.* (indicating that whether sovereign immunity applies is an issue of law). And although the tribal constitution and bylaws do not explicitly bestow on the tribal treasurer the authority to disseminate financial information to tribal members, nothing in these documents prohibits

such activity, and the material terms of the bylaws suggest that the treasurer has the authority to do so.[2] The bylaws indicate that the treasurer is "the custodian of all [tribal] funds" and must keep an accurate record of these funds. Due to the nature of the position, the treasurer is in a unique position to monitor the financial affairs of the tribe and is more likely to discover improprieties as they arise. Moreover, as a member of the tribal council, the treasurer is charged with the duty of "safeguard[ing] and promot[ing] the peace, safety, morals, and general welfare" of the tribe. Informing tribal members of financial matters of tribal concern is consistent with the tribe's sovereign power and that treasurer's duty. Because there is no factual issue about the tribe's duty to safeguard and promote the tribe, we conclude that Johnson had the authority to send the newsletters. *See Diver v. Peterson*, 524 N.W.2d 288, 290 (Minn.App.1994), *review denied* (Minn. Feb. 14, 1995) (holding that tribal attorney acted within the scope of his authority in making comments in newspaper and on television regarding the reasons for terminating tribal employees, despite the fact that no lawsuit was currently pending, because it was his duty to make public statements on internal tribal affairs).

Respondents argue that Johnson had an ulterior motive in sending the newsletters and the information contained in them was inaccurate. But the application of sovereign immunity does not hinge on the truth or motive of an official's statements; rather, the focus of a sovereign immunity analysis in the context of a defamation suit is whether the official had the general authority to communicate on behalf of the tribe. *See Diver*, 524 N.W.2d

---

2. The treasurer is a member of the tribal council. The tribal council determines which of its members is assigned to each position on the council, including president, secretary, and treasurer.

at 290–91 (concluding that sovereign immunity applied to bar defamation suits against tribal attorney without examining the truth or motive of the attorney's statements). Here, Johnson had the authority to communicate about financial affairs with tribal members and it is clear from the newsletters themselves that they were written in his official capacity as treasurer of the tribe. The newsletters were issued on tribal letterhead. Each is titled "Treasurer's Report" and followed by a date. Each is addressed to tribal members and is signed by Johnson as tribal treasurer. Because these communications are plainly within the scope of the tribe's authority, we conclude that tribal sovereign immunity extends to Johnson's mailing of the newsletters and bars respondents' suits in state court.[3]

## DECISION

Johnson is entitled to the protection of sovereign immunity and to summary judgment because no genuine issues of material fact exist as to whether he was acting within the scope of his authority as tribal treasurer when he mailed the newsletters to tribal members.

**Reversed.**

[3] Because we conclude that sovereign immunity applies in this instance, we need not address Johnson's alternative argument concerning absolute privilege.