J.E.B., et al., Appellants,

v.

Debra DANKS, Respondent.

No. A08–2175.

Supreme Court of Minnesota.

July 22, 2010.

Paul D. Peterson, Jordan A. Handrich, Harper & Peterson, P.L.L.C., Woodbury, MN; and Bradford S. Delapena, Bradford Delapena, Ltd., St. Paul, MN, for appellants.

Daniel L. Palmquist, Amy Walsh Kern, Leonard, Street and Deinard, Minneapolis, MN, for respondent.

## OPINION

GILDEA, Chief Justice.

This case involves the statutory immunity provision of the Reporting of Maltreatment of Minors Act, codified at Minn.Stat. § 626.556 (2008). In January 2007, appellants, members of the B. family, brought suit against respondent Debra Danks, alleging slander per se, libel, false reporting under Minn.Stat. § 626.556, intrusion upon seclusion, and public disclosure of private facts. In their complaint, appellants claimed that Danks filed a false report with county child protection workers alleging that appellants' son was sexually abusing their daughter and that Danks spread false rumors in their community to the same effect. The district court granted summary judgment to Danks on the grounds that she was entitled to statutory immunity under Minn.Stat. § 626.556, subd. 4(a)(1).[1] The court of appeals affirmed. *J.E.B. v. Danks,* No. A08–2175, 2009 WL 2498747, at *1 (Minn.App. Aug.18, 2009). Because we conclude that there is a genuine dispute of material fact, we reverse and remand.

During the course of an April 2006 play-date between the B. family's daughter and Danks' daughter, the two girls played a game called "secrets." Neither girl testified as to what was said during the secrets game. But Danks told Mrs. B. that she believed, from Danks' daughter's reports of the secrets game, that the B. family's son was sexually abusing the B. family's daughter. Mrs. B. was upset, but both women testified in their depositions that the conversation ended with a hug and a promise that B. family would consult a therapist. The B. family had a series of counseling sessions through a community counseling center beginning just a few days later. The counselor determined that the B. family's son's actions toward his sister were not sexual in nature and that he had not sexually abused his sister.

About three weeks after the secrets game, Mrs. B. called Danks to thank her for coming forward with the information and to let Danks know that Mrs. B. "was very thankful it wasn't what [Danks] was claiming it to be." According to Danks, Mrs. B. explained that the incident between brother and sister was not sexual abuse but simply the brother's attempt during roughhousing to give his sister a "wedgie." Mrs. B. testified in her deposition that Danks did not believe her that there was no sexual abuse and continued to insist that Mrs. B. was not telling the counselor the whole truth. Mrs. B. further testified that Danks wanted to speak directly with the counselor and asked questions that Mrs. B. deemed overly intrusive, which Mrs. B. declined to answer.

Danks testified at her deposition that she remained concerned after the call from Mrs. B. because Danks felt Mr. and Mrs. B. were not taking their daughter's statements seriously enough and had not given the counselor sufficient information to

---

1. This statute provides for immunity "from any civil or criminal liability that otherwise might result from" reports made to the government of suspected child abuse if the reporter is "acting in good faith." Minn.Stat. § 626.556, subd. 4.

make a full assessment. Shortly after the conversation, Danks learned that the daughter of another friend was planning to spend the night at appellants' home. Danks drafted a letter to Mr. and Mrs. B., expressing her ongoing concerns regarding the B. family's handling of the allegations of sexual abuse. Danks shared the letter with the friend whose daughter was planning to spend the night at appellants' home and asked that friend for advice on how Danks should proceed. Danks also videotaped an interview with her own daughter in which the girl responded to Danks' questions about the secrets game.

Danks never sent the letter she had initially drafted, but she did send Mr. and Mrs. B. an email substantially similar to it. Danks' email stated in part:

> What you likely cannot see right now is that I simply have no responsible alternative. The crux of the issue and the reason I continue to be unwillingly stuck in the center of this is this: ABUSE OCCURRED. And even though you are in therapy you are continuing to deal with it as if it were a distortion, a misunderstanding, or a lie. You are refusing to accurately report to your therapist that actual acts of abuse did happen. Neither of your children affected by the abuse ... will be treated appropriately without full disclosure. You are making decisions about the safety of children, yours and others, as if no abuse occurred.

In the same email, Danks expressed her concerns about other children spending the night at appellants' home, asking whether it must "become [her] responsibility to tell parents of these children" and expressing that she felt she "did the wrong and unethical thing by leaving it to [appellants]." Danks called Mrs. B. "hostile and abusive" and, even though no report of the alleged abuse had yet been made, stated that if appellants had "handled this as an abuse issue, a report to the department of child protection would never have been necessary." In her deposition, Danks explained that after she sent the email, she decided to "let it go" and not make a report to authorities.

Shortly after receiving Danks' email, appellants began to feel ostracized by their friends and acquaintances. Appellants came to believe that Danks had communicated her suspicions to others. On appellants' behalf, an attorney wrote a letter to Danks on June 29, 2006, asking her to cease and desist from public comment regarding her suspicions of abuse, to provide the names of the people she had already told, and to provide a disclaimer acceptable to appellants retracting the statements made.

In her deposition, Danks denied communicating her suspicions to others in the community, other than her husband and the friend to whom she had earlier shown the draft letter. Danks testified that, once she sent the email to Mr. and Mrs. B., she had decided not to report the suspected abuse to authorities. But, after receiving the attorney's June 29, 2006, letter, Danks contacted a lawyer, the county attorney's office, and county child protection for information about the immunity available to those who report suspected child abuse.

In early August 2006, Danks contacted county child protection again, this time to file a formal report of abuse. According to the child protection screener who took her report, Danks reported that Mr. and Mrs. B.'s daughter "was still being sexually abused by her brother, that the family hadn't done anything about it, and that she was concerned for the safety of the little girl." An intake investigator, who interviewed Mrs. B.'s daughter and spoke with Mrs. B. and the B. family's counselor, determined that there was no maltreatment,

that no protective services were needed, and that Danks' report of abuse was false.

Appellants filed a complaint against Danks alleging slander, libel, making a false report, intrusion upon seclusion, and public disclosure of private facts. Following discovery, Danks moved for summary judgment on all five claims. The district court granted Danks summary judgment, determining that Danks was entitled to statutory immunity under Minn.Stat. § 626.556, subd. 4, and that this immunity barred all appellants' claims. The district court explained its reasoning as follows:

> Plaintiffs argue that the timing of the Defendant's report raises a fact issue for determination by a jury on the question of Defendant's good faith. Normally, Plaintiffs' position would be correct. However, as discussed above, in cases where the trial court needs to determine if statutory immunity applies, mixed questions of fact and law are left to the discretion of the trial judge in the interest of judicial economy.

The district court also concluded that Danks was entitled to her costs and attorney fees under Minn.Stat. § 626.556, subd. 4(d) (providing that "court may award" attorney fees and costs to reporter of abuse).

Appellants challenged the district court's grant of summary judgment on three different grounds before the court of appeals. First, appellants argued that the district court applied the wrong summary judgment standard and engaged in judicial factfinding inappropriate on summary judgment. Second, appellants argued that the immunity conferred by Minn.Stat. § 626.556 does not apply to the B. family's common law claims. Third, the appellants argued that the district court erred in awarding Danks attorney fees.

The court of appeals affirmed the district court's grant of summary judgment.

*Danks,* 2009 WL 2498747, at *1. The court of appeals agreed with appellants that a district court has no authority to engage in factfinding in the immunity context, but affirmed the district court's grant of summary judgment under the traditional summary judgment standard. *Id.* at *3 & n. 1. The court of appeals also held that the district court did not err in treating statutory immunity under Minn.Stat. § 626.556, subd. 4, as broad enough to bar all of appellants' claims. *Id.* at *8. Finally, because the district court had reserved ruling on Danks' fee petition pending appeal, the court of appeals remanded for a determination of the motion for attorney fees. *Id.* at *10–11. We granted appellants' petition for review.

I.

The district court granted Danks' summary judgment motion on the ground that she was entitled to statutory immunity under Minn.Stat. § 626.556, subd. 4. Before considering whether summary judgment was proper, we first discuss the elements necessary to establish statutory immunity under subdivision 4 and the proper standard to apply when considering whether those elements have been established for purposes of summary judgment.

A.

■ Minnesota Statutes § 626.556, subdivision 4, provides that "any person making a voluntary or mandated report under subdivision 3" is "immune from any civil or criminal liability that otherwise might result from their actions, if they are acting in good faith." Minn.Stat. § 626.556, subd. 4(a). Subdivision 3 provides that a person "may voluntarily report to the local welfare agency, agency responsible for assessing or investigating the report, police department, or the county sheriff if the

person *knows, has reason to believe, or suspects* a child is being or has been neglected or subjected to physical or sexual abuse."[2] Minn.Stat. § 626.556, subd. 3(b) (emphasis added). The burden rests with Danks, as the party asserting immunity, to establish all of the requisite facts that entitle her to immunity under subdivision 4. *See Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn.1997) (setting forth the general rule that the burden to establish the factual basis for immunity rests with the person invoking immunity).

■■■ The district court held that a reporter of child abuse must prove two things to establish that he or she is entitled to immunity: (1) that the person knows or has reason to believe that abuse occurred, and (2) that the report is made in good faith. The court of appeals echoed this standard. *Danks*, 2009 WL 2498747, at *4. This is not a correct reading of the statute. Subdivision 3 permits a person to voluntarily report "if the person knows, has reason to believe, or *suspects*" child abuse, and subdivision 4 grants immunity to those making a voluntary or mandated report under subdivision 3 in good faith. (Emphasis added.) The district court's discussion of the elements of immunity under subdivision 4 omitted immunity based on suspicion of child abuse. We hold, based on the plain language of the statute, that immunity under Minn.Stat. § 626.556, subd. 4, applies where: (1) the person knows, has reason to believe, or

suspects that abuse occurred, and (2) the report is made in good faith.

**B.**

■■■ The parties dispute whether the traditional summary judgment standard applies to consideration of a motion within the context of statutory immunity. Under the traditional standard, a district court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal, we "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). We ask two questions on an appeal from summary judgment: "(1) whether there are any genuine issues of material fact, and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The application of immunity is a question of law that we review de novo. *Conlin v. City of St. Paul*, 605 N.W.2d 396, 400 (Minn.2000).

In its memorandum, the district court stated that "[t]he trial court's determination as to the applicability of immunity necessarily will include mixed questions of law and fact." The district court then stated that, although the timing of Danks'

---

**2.** Although any person may voluntarily report "if the person knows, has reason to believe, or suspects a child is being or has been neglected or subjected to physical or sexual abuse," a mandatory reporter must report only if he or she "knows or has reason to believe a child is being neglected or physically or sexually abused ... or has been neglected or physically or sexually abused within the preceding three years." *Compare* Minn.Stat. § 626.556, subd. 3(b), *with* Minn.Stat. § 626.556, subd.

3(a). Danks expressed a belief that, because she is a teacher, she might be a mandatory reporter under the statute. *See* Minn.Stat. § 626.556, subd. 3(a)(1). But during the events in question, Danks was not teaching and her license appears to have lapsed. In addition, both parties appear to treat Danks as a voluntary reporter, rather than as a mandatory reporter. Therefore, for purposes of this opinion, we treat Danks as a voluntary reporter governed by subdivision 3(b).

filing of the report of suspected abuse would normally raise a fact issue for determination by the jury on the question of Danks' good faith, "in cases where the trial court needs to determine if statutory immunity applies, mixed questions of fact and law are left to the discretion of the trial court in the interest of judicial economy." This is the wrong legal standard.

■ We have repeatedly invoked the traditional summary judgment standard in cases involving common law immunity. *See, e.g., Thompson v. City of Minneapolis,* 707 N.W.2d 669, 673 (Minn.2006); *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 571 (Minn.1994); *Johnson v. Morris,* 453 N.W.2d 31, 41–42 (Minn. 1990). As we explained in *Thompson,* "While we recognize that official immunity is intended to provide immunity from suit, not just from liability, when predicate facts are in dispute, we cannot determine whether official immunity applies until the factual disputes are resolved." 707 N.W.2d at 675 (citation omitted) (internal quotation marks omitted). Because in *Thompson,* there were "[c]ompeting versions of the events [that] support[ed] different conclusions of what actually happened," we reversed the grant of summary judgment. *Id.; see also State by Beaulieu,* 518 N.W.2d at 573 (determining that summary judgment was not appropriate on immunity question). This case involves immunity that arises from statute, but the source of the immunity (i.e., common law or statute) does not provide a basis for departing from our traditional summary judgment standard.

■ Under the traditional standard, the district court is not to find facts by resolving disputes at the summary judgment stage, but is to determine whether, when the evidence is construed in the light most favorable to the party opposing summary judgment, there is a genuine issue of material fact. Minn. R. Civ. P. 56.03; *Fabio,* 504 N.W.2d at 761. In concluding that it had discretion to make some factual determinations on summary judgment in the immunity context, the district court relied on a passage from *Rehn v. Fischley,* in which we explained that "[b]ecause the determination of an immunity's application is best decided by the trial court at the earliest possible juncture, however, the trial court's determination necessarily will include mixed questions of law and fact" and concluded that "we will correct erroneous applications of law, but accord the trial court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard." 557 N.W.2d 328, 333 (Minn.1997). *Rehn* does not stand for the proposition that the district court may resolve factual disputes at the summary judgment stage. Indeed, *Rehn* did not present a dispute as to the factual predicate for immunity. The factual predicate—the existence of good faith—was undisputed. *Id.* at 334. The issue for resolution was a question of law: whether certain conduct of an official acting "on behalf of the nonprofit corporation," but performing a function "outside the specific scope of his or her duty as members of the board," was entitled to immunity under the statute. *See id.* at 334–35.[3] Accordingly, *Rehn* should not be read to alter the traditional summary judgment standard in the context of statutory immunity.

The district court further stated that it was entering judgment for Danks because appellants "ha[d] not presented any substantial evidence that indicates that

**3.** We held that the immunity in the statute covered this conduct. *Rehn,* 557 N.W.2d at 335.

the Defendant acted in bad faith." The "substantial evidence" standard is not the correct standard to apply on summary judgment. The question on summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, the court can say that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03; *Fabio,* 504 N.W.2d at 761.

## II.

In her brief to this court, Danks argues that, even if the district court applied the wrong summary judgment standard, the decision should be affirmed, because she prevails even under the traditional summary judgment standard. Appellants argue that summary judgment was improper under the traditional standard because there are disputes of material fact. We turn to that question next.

In order to affirm the district court's grant of summary judgment based on statutory immunity, we must determine that, construing the evidence in the light most favorable to appellants, there is no genuine question of material fact on either of the two prerequisites to immunity: (1) that Danks knew, had reason to know, or suspected that abuse occurred, and (2) that Danks made her report in good faith. *See* Minn.Stat. § 626.556, subds. 3, 4. If appellants have shown that there is a genuine dispute of fact as to either of these prerequisites, then summary judgment was inappropriate.

We first consider whether, construing the evidence in the light most favorable to appellants, there is no genuine dispute as to whether Danks made her report in good faith. There is no specific definition of "good faith" in Minn.Stat. § 626.556. But Danks argues that, in light of the over-

arching purposes of the statute, we should construe the "good faith" requirement liberally so as to encourage people to come forward with reports without fear of reprisal. The stated purpose of the Reporting of Maltreatment of Minors Act is to "protect children whose health or welfare may be jeopardized through physical abuse, neglect, or sexual abuse." Minn.Stat. § 626.556, subd. 1. The statute is based on the premise that "[w]hile ... most parents want to keep their children safe, sometimes circumstances or conditions interfere with their ability to do so" and "[w]hen this occurs, families are best served by interventions that engage their protective capacities and address immediate safety concerns and ongoing risks of child maltreatment." *Id.* To further this statutory purpose, section 626.556 provides for both mandatory and voluntary reporting and grants immunity to those who make official reports under its provisions. Minn.Stat. § 626.556, subds. 3, 4.

Danks suggests we should hold that, in order to establish "good faith" under the statute, all the reporter must do is establish that he or she had a suspicion that abuse was occurring. This approach, Danks suggests, would further the statute's purpose of seeking to "protect children whose health or welfare may be jeopardized through physical abuse, neglect, or sexual abuse," Minn.Stat. § 626.556, subd. 1, by allowing voluntary reporters to come forward freely with reports of abuse.

Given that the immunity provision already requires that a voluntary reporter know, have reason to know, or suspect that abuse is occurring or has occurred, an interpretation equating good faith with mere suspicion, as Danks' interpretation does, would largely eviscerate the "good faith" requirement of the statute. *See* Minn.Stat. § 626.556, subds. 3, 4. We are to assume that "the legislature intends the

entire statute to be effective and certain." Minn.Stat. § 645.17 (2008); *see also Van Asperen v. Darling Olds, Inc.,* 254 Minn. 62, 73–74, 93 N.W.2d 690, 698 (1958) ("We apply the fundamental rule of statutory construction that a statute is to be read and construed as a whole so as to harmonize and give effect to all its parts. Moreover, various provisions of the same statute must be interpreted in the light of each other, and the legislature must be presumed to have understood the effect of its words and intended the entire statute to be effective and certain."). If the requirement of "good faith" is to have meaning, the reporter must make a showing of state of mind that goes beyond mere "suspicion."

■ We must also interpret the immunity provision in light of Minn.Stat. § 626.556 as a whole, which provides some guidance as to what the parameters of "good faith" must be. *See Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) ("We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations."). The statutory scheme established by section 626.556 protects a good faith reporter with statutory immunity under subdivision 4, while subjecting a malicious reporter who "knowingly or recklessly makes a false report" to liability under subdivision 5. *See* Minn.Stat. § 626.556, subds. 4, 5. Thus, although there may not be a statutory definition setting forth exactly what a reporter must show to establish his or her good faith, it is clear that, at the very least, filing a report that is knowingly or recklessly false will defeat a showing of good faith. Minn.Stat. § 626.556, subd. 5; *see also State by Beaulieu,* 518 N.W.2d at 573 (explaining that, in determining whether a party acted in good faith or bad faith, a false statement made by the defendant may be evidence of bad faith).

■ Generally speaking, good faith is a matter of subjective intent. *See In re UnitedHealth Group Inc. Shareholder Derivative Litig.,* 754 N.W.2d 544, 563 (Minn. 2008) ("Thus, the statute's good faith requirement is entirely unlike its reasonableness requirement; the former sets forth the particular state of mind required of a corporate director, while the latter mandates that any decision be reasonable."). *Black's Law Dictionary* defines "good faith" in part as "[a] state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation." *Black's Law Dictionary* 762 (9th ed. 2009). Other courts have utilized this common understanding of "good faith" when interpreting the requirement in the context of immunity under their states' child-abuse-reporting statutes. *See, e.g., Rite Aid Corp. v. Hagley,* 374 Md. 665, 824 A.2d 107, 117 (2003) (" 'Acting in good faith denotes performing honestly, with proper motive, even if negligently.' " (quoting *B.W. v. Meade County,* 534 N.W.2d 595, 598 (S.D.1995))); *O'Heron v. Blaney,* 276 Ga. 871, 583 S.E.2d 834, 836 (2003) (describing good faith as "a subjective standard" and "a state of mind indicating honesty and lawfulness of purpose"); *Garvis v. Scholten,* 492 N.W.2d 402, 404 (Iowa 1992) ("Good faith in [the Iowa reporting statute] rests on a defendant's subjective honest belief that the defendant is aiding and assisting in the investigation of a child abuse report."). Under this standard, "the relevant question is whether the reporter honestly believed she had a duty to report. A reporter acting in good faith will be immune even if she is negligent or exercises bad judgment." *O'Heron,* 583 S.E.2d at 836–37; *see also Garvis,* 492 N.W.2d at 404 ("Negligence in forming or acting on

[the honest belief] is irrelevant to the good faith determination.").

■■■■ We agree that the common understanding of "good faith" should apply within the context of our reporting statute. And while we do not purport to adopt an exhaustive list of indicators of good faith, based on the common understanding of good faith and the statutory context of section 626.556, it is clear that a report made without an ulterior motive, made without malice and made for a proper purpose would be a report made in good faith. *See, e.g., Rite Aid,* 824 A.2d at 121 (affirming summary judgment based on good faith reporting immunity because all the party opposing summary judgment produced were "general allegations" that show the reporter's actions in making the report could be "second guessed" and concluding that "[l]egitimizing this sort of Monday-morning quarterbacking would render the immunity conferred [by the reporting statute] essentially useless"); *Garvis,* 492 N.W.2d at 404 (affirming summary judgment because "defendants' subjective good faith in aiding and assisting the investigation [of child abuse] went unchallenged").

With these principles in mind, we examine whether the evidence establishes Danks' good faith as a matter of law. Specifically, the question is whether, applying the common understanding of good faith to the facts of this case, there is a genuine dispute as to Danks' intentions in filing her report. Our careful review of the record confirms that there is such a dispute here.

For example, there is evidence from which a jury could infer that Danks was motivated in part by personal spite in making her report. Appellants cite the language in Danks' email in which she stated that "I have no small amount of unhappiness with you both for failing to take this into your own hands and handling it properly" and claimed Mrs. B. had become "hostile and abusive with me." Danks' email, which was very similar to the draft letter Danks showed to her friend, also used exaggerated language, stating that "ABUSE OCCURRED," despite the fact that Danks had no personal knowledge of the abuse. *Cf. Bol v. Cole,* 561 N.W.2d 143, 150 (Minn.1997) (noting that use of exaggerated language can support inference of actual malice). Additionally, a reasonable jury might infer that Danks did not act in good faith from the exaggerated language in the report itself. The report indicated that Danks had reported that the parents had "done nothing" and that abuse was continuing. But Danks knew that the B. family had gone into counseling after she talked to Mrs. B., and the record does not reflect that Danks had received new information that any abuse was continuing.

We also recognize that Danks testified that her concern, which was heightened after reading the letter from appellants' attorney, was that appellants were not protecting their daughter and this concern was the principal reason prompting her to take the more drastic step of filing an official report. Danks notes that appellants have offered no evidence to directly contradict her testimony. But, in addition to the evidence discussed above from which a reasonable jury might infer personal spite, appellants have offered evidence from which a reasonable jury could find that Danks' motive in making the report was not to protect against child abuse, but to protect herself.

This evidence includes the fact that Danks did not report her suspicions of abuse when she first heard her daughter's report of the B. family's daughter's statement in April, nor did she make a report after her phone conversation with Mrs. B. three weeks later when Mrs. B. told her

that they had not told the counselor exactly what Mrs. B.'s daughter had told Danks' daughter. In fact, Danks testified that she decided to "just let it go" and not to report after sending the email to the B. family. It was not until after Danks received the cease-and-desist letter from appellants' attorney that she called the county to inquire about immunity and make a report. Given the 3–month time gap between the time Danks learned of the abuse allegations and the time she filed her report together with the fact that she specifically discussed immunity with county officials at the time she made her report, a reasonable jury could infer that Danks' report was motivated primarily by her desire to acquire immunity rather than by her desire to protect the B. family's daughter from further abuse.

Danks correctly points out that the motivations appellants attribute to her are not the only inferences a reasonable jury could make based on the evidence. We agree. But our obligation at this stage of the proceedings is to construe the evidence in the light most favorable to the nonmoving party, and we must resolve conflicting inferences in favor of appellants on this appeal from summary judgment. *See Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 171 (Minn.1989) (noting that, because "conflicting inferences" could be drawn as to whether a guard should have noticed a crime taking place from the uncontested facts of the case, summary judgment was inappropriate); *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981) ("All doubts and factual inferences must be resolved against the moving party.").

While any single piece of evidence, viewed in isolation, is not dispositive, when we consider the record as a whole and resolve all inferences in favor of the nonmoving party, we are compelled to conclude that there is a genuine issue of material fact with respect to Danks' good faith. We therefore hold that summary judgment was inappropriate. This conclusion makes it unnecessary for us to consider whether Danks established the other elements of immunity as a matter of law.[4]

### III.

In their complaint, appellants bring claims based on Danks' alleged communication of the suspected abuse to "members of the community" and based on Danks' report of the suspected abuse to the county. With respect to the claims based on Danks' conversations with "members of the community," appellants contend that summary judgment was improper because the scope of immunity available under Minn.Stat. § 626.556, subd. 4, applies exclusively to the act of making a "report" to an official agency. We address this alternative issue to provide guidance on remand. *See State ex rel. Haak v. Bd. of Educ. of Indep. Sch. Dist. No. 625*, 367 N.W.2d 461, 467 (Minn.1985) ("The parties have raised and briefed certain issues that

---

4. Danks argues in the alternative that, even if the district court erred in granting summary judgment based on statutory immunity, we should affirm the district court's grant of summary judgment on alternative grounds. She argues that, based on the undisputed facts of this case, she is entitled to summary judgment on all five of appellant's claims against her: (1) slander per se, (2) libel, (3) false report, (4) intrusion upon seclusion, (5) public disclosure of private facts. Because the district court did not reach these arguments, we do not reach them. Moreover, because we conclude that the district court's decision to grant summary judgment was improper, we reverse as premature the district court's decision to award attorney fees under Minn.Stat. § 626.556, subd. 4(d) ("If a person who makes a voluntary or mandatory report under subdivision 3 prevails in a civil action from which the person has been granted immunity under this subdivision, the court may award the person attorney fees and costs.").

may present problems on remand and that in the interests of judicial economy should be commented on here."); *Finch v. Wemlinger*, 310 N.W.2d 66, 69 (Minn.1981) (addressing an issue specifically "[f]or the guidance of the parties at trial and in the interest of judicial economy").

■ The district court granted summary judgment on all of appellants' claims based on immunity under Minn.Stat. § 626.556, subd. 4, and the court of appeals affirmed, holding that the immunity provision of subdivision 4 is not limited to the actual act of filing an abuse report. *Danks*, 2009 WL 2498747, at *9–10. Appellants argue that the scope of immunity under Minn.Stat. § 626.556 is limited to immunity for liability that might be incurred for the act of making a "report" of suspected abuse to the proper agency, and does not apply to common law claims, such as defamation and intrusion upon seclusion, that were based, at least in part, on actions unrelated to Danks' filing of the abuse report. The scope of immunity is a question of law that we review de novo. *See Bol v. Cole*, 561 N.W.2d 143, 146–47 (Minn.1997).

To determine the scope of immunity, we first look to the language of Minn.Stat. § 626.556, subd. 4, which provides:

> The following persons are immune from any civil or criminal liability that otherwise might result from their actions, if they are acting in good faith: (1) any person making a voluntary or mandated report under subdivision 3 . . . .

Subdivision 3 addresses reporting requirements for mandatory and voluntary reporters. The immunity provided in subdivision 4 therefore extends to actual "reports" of child abuse, and under subdivision 3, such reports are to be made to "the local welfare agency, agency responsible for assessing or investigating the report, police department, or county sher-

iff." Minn.Stat. § 626.556, subd. 3(a), (b); *see also* Minn.Stat. § 626.556, subd. 2(h) (" 'Report' means any report received by the local welfare agency, police department, county sheriff, or agency responsible for assessing or investigating maltreatment."). Nothing in subdivision 4 explicitly provides immunity for common law claims that relate to actions that are distinct from the actual act of reporting.

Danks argues for a broader construction of the immunity provision of subdivision 4, arguing that because under subdivision 4 reporters are immune "from any civil or criminal liability," immunity necessarily extends, not just to the official report, but to all the reporter's actions leading up to the official report. Minn.Stat. § 626.556, subd. 4. Danks argues that this interpretation is consistent with the policy underlying the statute, namely to "encourage reports with a factual basis."

■ But as a general rule, statutory immunity in derogation of a common law right is to be narrowly construed. *Car Lease Inc. v. Kitzer*, 276 Minn. 289, 291–92, 149 N.W.2d 673, 675 (1967). And we applied statutory immunity narrowly in the only other case in which we have interpreted the scope of immunity under Minn.Stat. § 626.556, subd. 4. In *Bol v. Cole*, 561 N.W.2d 143 (Minn.1997), an alleged child abuser sued a psychologist for defamation after she reported that she suspected him of abusing a 5–year–old boy. The psychologist made an official report of the suspected abuse under Minn.Stat. § 626.556, subd. 3, and also reported her suspicions to the boy's mother. 561 N.W.2d at 144–45. We held that the same immunity that protected the psychologist from suit based on her mandatory report under subdivision 3 did not extend to the report made to the boy's mother. *Id.* at 147.

Danks argues that this case is distinguishable from *Bol* because the actions that formed the basis of appellants' common law claims occurred *before* Danks made her official report and were part of her deliberative process leading up to the report, whereas the psychologist in *Bol* sent the allegedly defamatory report to the mother *after* making her official report. This was also the distinction made by the court of appeals, which explained that Danks' request for advice from Danks' friend and her questioning of Mrs. B. were "made in furtherance of significant purposes of the statute, specifically, to encourage reports with a factual basis, and to discourage false reports." *Danks*, 2009 WL 2498747, at *8 (citation omitted). We disagree.

Although the statute protects good faith reports to authorities, as are permitted and often required by subdivision 3, the statute does not grant immunity from suit to those who disclose potentially defamatory information to third parties. *See Bol*, 561 N.W.2d at 147 (explaining that the immunity provision is intended to immunize those making reports under subdivision 3 and concluding that because there is no provision in subdivision 3 for sharing a report with a parent of a victim of abuse, immunity does not apply in such a case). Instead, the immunity under subdivision 4 bars claims based on actual reports of abuse made to the proper officials. The court of appeals therefore erred in holding that Danks could rely on statutory immunity as a defense to the common law claims brought by appellants against Danks that involve communications beyond the report made to an official agency. *Danks*, 2009 WL 2498747, at *7–9.

Reversed and remanded to the district court for further proceedings consistent with this opinion.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.