# STATE OF MINNESOTA
## IN COURT OF APPEALS
### A23-0685

State of Minnesota,
Respondent,

vs.

Christopher Allen Borgquist,
Appellant.

**Filed May 6, 2024**
**Affirmed in part, reversed in part, and remanded**
**Segal, Chief Judge**

Sherburne County District Court
File No. 71-CR-19-786

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathleen A. Heaney, Sherburne County Attorney, George R. Kennedy, Assistant County Attorney, Elk River, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Segal, Chief Judge; and Smith, John, Judge.*

## SYLLABUS

1.      Subdivision 1 of the Minnesota Good Samaritan overdose medical assistance act, Minn. Stat. § 604A.05 (2022), provides for immunity from prosecution, not an

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

affirmative defense, and eligibility for immunity under the statute is therefore properly determined by the district court.

2. The phrase "[a] person acting in good faith who seeks medical assistance" in the first sentence of Minn. Stat. § 604A.05, subd. 1, means a person acting with an honesty in belief or purpose who tries to locate medical assistance.

3. The phrase "acting in good faith" in the first sentence of Minn. Stat. § 604A.05, subd. 1, modifies the phrase that immediately follows: "who seeks medical assistance"; it does not modify the requirement to "cooperate[] with the authorities," which is set out in subparagraph (2) of subdivision 1. Whether the criteria set out in subparagraphs (1) and (2) are satisfied is to be judged objectively, independent of the phrase "acting in good faith."

**OPINION**

**SEGAL**, Chief Judge

Appellant challenges his convictions of two counts of fifth-degree controlled-substance crime, claiming that he is immune from prosecution under subdivision 1 of the Minnesota Good Samaritan overdose medical assistance act (the MGSA). Minn. Stat. § 604A.05. The MGSA offers immunity from prosecution for certain controlled-substance crimes when a "person acting in good faith . . . seeks medical assistance for another person who is experiencing a drug-related overdose" and the person satisfies other eligibility criteria outlined in subdivision 1. *Id.* Appellant argues that the district court erred by determining that appellant failed to satisfy the good-faith requirement of the MGSA because he did not immediately disclose to the first responders that the overdose victim

had consumed an excessive amount of alcohol, ingested cocaine, and had possibly used heroin. Appellant argues, in the alternative, that the district court erred by denying his motion to submit his immunity claim to the jury as an affirmative defense.

We agree with the district court that subdivision 1 of the MGSA provides immunity from prosecution, not an affirmative defense. But we conclude that the district court applied an incorrect interpretation of the statute, and we therefore affirm in part, reverse in part, and remand.

**FACTS**

At 6:46 a.m. on January 13, 2019, appellant Christopher Allen Borgquist called 911 to report that his friend was "blue" and "not breathing." Two deputies from the Sherburne County Sheriff's Office were the first to arrive in response to the call. Borgquist met the deputies at the door and told them to "hurry inside." Borgquist's friend, J.J., was lying on a couch and J.J.'s girlfriend, A.O., was standing near him. Borgquist helped the deputies move J.J. from the couch to the floor. The deputies observed that J.J. was not breathing, his arm was cold to the touch, and he did not have a carotid or brachial pulse. The deputies began chest compressions and deployed an automated external defibrillator (AED). The AED device did not recommend administration of a shock.

Borgquist answered questions the deputies posed to him while they provided aid to J.J. In response to questions from one of the deputies, Borgquist stated that J.J. had used cocaine and alcohol. Borgquist identified no other drugs. Paramedics and firefighters arrived and took over the emergency response for J.J. One of the deputies then spoke with Borgquist and A.O. to obtain more information. Borgquist relayed that he had picked up

3

J.J. and A.O. at a bar the night before around 1:00 a.m. and brought them back to J.J. and A.O.'s house. A.O. stated that she had then gone upstairs to bed. She told the deputy that her phone showed that J.J. tried to call her at 2:21 a.m., but she was asleep and did not pick up.

Borgquist shared with the deputy that he and J.J. stayed downstairs and drank alcohol and used cocaine. J.J. then fell asleep around 3:00 a.m. on the couch. Borgquist heard odd snoring sounds from J.J., sat down near him in a chair, and "passed out" in the chair not long after. He awoke a few hours later and discovered J.J. was "not breathing," was "blue," and that his arms were cold. Borgquist said he woke A.O. and called 911. A.O. and Borgquist attempted CPR on J.J. until the deputies arrived. The deputy shared the information provided by A.O. and J.J. with the paramedics, who were still attempting to resuscitate J.J. At 7:30 a.m., after the paramedics had conferred with their medical adviser, J.J. was pronounced dead at the scene.

After the death pronouncement, an investigating sergeant from the sheriff's office arrived at the house while Borgquist was still present. The sergeant sought a voluntary statement from Borgquist, which Borgquist agreed to provide. Borgquist's statement added more details about their activities, for example, that he and J.J. drank a bottle and a half of Fireball whiskey and that they each consumed two to three "lines" of cocaine before falling asleep. His responses were otherwise consistent with what he had previously shared. When asked who had the cocaine, Borgquist stated, "[J.J.] had it." A.O. confirmed in her statement that the cocaine was supplied by J.J. Borgquist did not disclose the possible use of any other drugs.

4

A few hours after the first statement, the sergeant asked Borgquist to provide a second voluntary statement. During the second statement, the sergeant asked Borgquist about a text exchange from the night before that had been found on J.J.'s phone. The text from Borgquist to J.J. stated: "Good cause I got some bomb brown for us." Borgquist denied that he knew what "brown" meant, but later admitted he knew his denial was "bullsh-t" and that it referred to heroin. The sergeant asked whether there were drugs in Borgquist's truck, which was parked in J.J.'s driveway. Borgquist stated there was "nothing in there." The sergeant also asked if he could look at Borgquist's cell phone and search his truck. Borgquist said that his phone was being charged in his truck and he refused to retrieve his phone or to allow a search of the truck. A warrant was obtained to search the truck, and the search yielded what was later identified as 0.244 grams of a compound containing heroin and fentanyl and 110.65 grams of marijuana.

An autopsy was subsequently performed on J.J. and toxicology tests detected the presence of heroin, fentanyl, alcohol, and cocaine. The medical examiner noted that J.J.'s blood level of fentanyl "would be considered lethal for a naïve opiate user" and that J.J. had an alcohol concentration of 0.187. The medical examiner concluded that J.J.'s death was caused by the "toxic effects of fentanyl, heroin, ethanol, and cocaine."

Respondent State of Minnesota charged Borgquist with two felony counts of fifth-degree unlawful possession of a controlled substance—one for possession of heroin and one for marijuana. Borgquist made a motion to dismiss the charges, claiming immunity under subdivision 1 of the MGSA, which provides:

5

A person acting in good faith who seeks medical assistance for another person who is experiencing a drug-related overdose may not be charged or prosecuted for the possession, sharing, or use of a controlled substance under section 152.023, subdivision 2, clauses (4) and (6), 152.024, or 152.025, or possession of drug paraphernalia. A person qualifies for the immunities provided in this subdivision only if:

(1) the evidence for the charge or prosecution was obtained as a result of the person's seeking medical assistance for another person; and

(2) the person seeks medical assistance for another person who is in need of medical assistance for an immediate health or safety concern, provided that the person who seeks the medical assistance is the first person to seek the assistance, provides a name and contact information, remains on the scene until assistance arrives or is provided, and cooperates with the authorities.

Minn. Stat. § 604A.05, subd. 1. The MGSA defines the phrase "drug-related overdose" as "an acute condition . . . resulting from the consumption or use of a controlled substance, or another substance with which a controlled substance was combined, and that a layperson would reasonably believe to be a drug overdose that requires immediate medical assistance." Minn. Stat. § 604A.05, subd. 5.

Following an omnibus hearing, the district court denied Borgquist's motion to dismiss, concluding that Borgquist failed to qualify for immunity under the MGSA because he did not act in good faith. The district court interpreted the phrase "[a] person acting in good faith who seeks medical assistance" as meaning "the person seeking immunity acted to obtain immediate, effective medical treatment for the person experiencing overdose based upon the facts known to the actor at that time." The district court found that Borgquist did not act in good faith because he delayed telling the deputies that J.J. had

6

ingested cocaine until specifically asked about drug use. And while Borgquist promptly told the deputies that J.J. had had a "few drinks" the night before, he delayed sharing "the extreme amount of alcohol consumed" until his voluntary statement after J.J. was pronounced dead. The district court further found that "[t]he circumstantial evidence indicates it is quite likely [Borgquist] knew [that J.J.] had consumed the heroin which contributed to his death as [Borgquist's] phone message indicated he had heroin ('Bomb Brown') 'for us' and heroin was found in [Borgquist's] possession." The district court reasoned that, if Borgquist had mentioned the possible use of heroin, the deputies might have administered Narcan, which the deputies had available in their squad car.

The district court thus held that Borgquist's "delay in reporting the extreme amount of alcohol consumed and cocaine use, and failure to mention the possibility of heroin use, do not constitute good faith efforts designed to save [J.J.'s] life." The district court, however, noted that, "[e]ven absent knowledge of heroin use," good-faith efforts to save J.J.'s life would require immediate disclosure of J.J.'s heavy alcohol intake and cocaine use.

The district court also denied a later motion by Borgquist to submit his MGSA claim as an affirmative defense to the jury. The district court determined that the MGSA is not an affirmative defense but offers immunity from prosecution that "requires a judicial determination at the earliest opportunity regarding whether the State is barred from prosecuting a named defendant." The district court explained that the purpose of the statute—"maximiz[ing] the likelihood that those experiencing a drug-related overdose will

receive medical assistance"—would otherwise be defeated "because to raise an affirmative defense a defendant must be charged and prosecuted."

The case was submitted to the court for a trial on stipulated facts and evidence, pursuant to Minn. R. Crim. P. 26.01, subd. 3. The district court found Borgquist guilty of both counts in the complaint, entered judgment of conviction, and imposed a stayed sentence of 19 months' imprisonment for possession of heroin.

## ISSUES

I.     Does subdivision 1 of the MGSA constitute an immunity provision, the applicability of which is to be determined by the district court, or is it an affirmative defense to be submitted to a jury?

II.    Did the district court err in concluding that Borgquist failed to qualify for immunity under subdivision 1 of the MGSA?

## ANALYSIS

The issues asserted on appeal all involve questions of statutory interpretation that are reviewed de novo. *State v. Defatte*, 928 N.W.2d 338, 340 (Minn. 2019). The goal of statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2022). The first step in interpreting a statute is to determine whether the language of the statute is ambiguous. *Defatte*, 928 N.W.2d at 340. "A statute is ambiguous when its language is subject to more than one reasonable interpretation." *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015). If the statutory language is unambiguous, "[t]he plain language of the statute controls." *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019) (quotation omitted).

**I.**

We begin our analysis by determining whether subdivision 1 of the MGSA constitutes an immunity provision to be decided by the district court. Immunity provisions serve as a bar to prosecution while an affirmative defense offers a mitigating circumstance that, if found to exist by the finder of fact, can reduce or absolve a defendant of responsibility for a criminal offense. *See, e.g.*, *State v. Auchampach*, 540 N.W.2d 808, 816 n.7 (Minn. 1995) (noting that "[m]itigating circumstances or issues" are referred to as a "defense" or an "affirmative defense"); *Sletten v. Ramsey County*, 675 N.W.2d 291, 299-300 (Minn. 2004) (explaining in a civil suit that "[w]hereas an affirmative defense protects the party from liability, immunity typically protects a party from the lawsuit itself").

The district court concluded in this case, and we agree, that subdivision 1 of the MGSA involves immunity from prosecution that is properly decided by the court. Subdivision 1 of the MGSA provides that, when the criteria for eligibility are satisfied, the person "*may not be charged or prosecuted* for the possession, sharing, or use of a controlled substance under" the listed statutory sections. Minn. Stat. § 604A.05, subd. 1 (emphasis added). This wording can be read no other way than as a grant of immunity for eligible individuals.

The contrast in wording between subdivisions 1 and 4 of the MGSA reinforces this conclusion. Subdivision 4 addresses the effect of the MGSA on criminal prosecutions for which immunity is not provided by subdivision 1. Subdivision 4 states that "[t]he act of providing first aid or other medical assistance to someone who is experiencing a drug-related overdose may be used as a *mitigating factor* in a criminal prosecution for which

9

immunity is not provided." *Id.*, subd. 4(a) (emphasis added). Thus, within the same statutory section, the legislature distinguished between circumstances when a defendant "may not be charged or prosecuted" for a listed offense—the circumstances set out in subdivision 1—and the circumstances when a defendant may be charged and prosecuted but can present evidence of efforts to provide medical assistance for an overdose victim as a "mitigating factor." *Id.*, subds. 1, 4(a). The difference between the two subdivisions underscores the conclusion that subdivision 1 unambiguously offers immunity from prosecution rather than an affirmative defense.

We therefore affirm the district court's denial of Borgquist's motion to submit his MGSA claim as an affirmative defense at trial.

## II.

We now turn to the second issue in this appeal—whether the district court erred in determining that Borgquist did not act in good faith and therefore failed to qualify for immunity under the MGSA.

The district court found, and neither party challenges, that Borgquist satisfied a number of the eligibility requirements to claim immunity under the MGSA, including that Borgquist was the first to call 911 to seek medical assistance for J.J.; "reasonably believe[d]" J.J. was experiencing a "drug overdose" and was "in need of medical assistance for an immediate health or safety concern"; provided "a name and contact information"; and "remain[ed] on the scene until assistance arrive[d] or [was] provided." *Id.*, subds. 1, 5. The district court also determined, and it is uncontested, that the evidence leading to Borgquist's prosecution and convictions "was obtained as a result of [Borgquist's] seeking

10

medical assistance for" J.J., and that the charges brought against Borgquist are among the offenses that qualify for immunity. *Id.*, subd. 1. This leaves two contested issues: (1) whether Borgquist was "[a] person acting in good faith who seeks medical assistance," and (2) whether Borgquist "cooperate[d] with the authorities." *Id.*

Borgquist argues that the district court erred in interpreting the duty to act in good faith as requiring "a full-throated confession at the first encounter with first responders." He contends that the good-faith requirement applies only to the act of seeking medical assistance. He maintains, in essence, that the district court improperly conflated the duty of good faith with the requirement of cooperating with the authorities when the court concluded that Borgquist failed to act in good faith because he did not immediately disclose cocaine use and the volume of alcohol ingested by J.J.

In support of his argument, Borgquist cites the last-antecedent rule. That rule "instructs that a limiting phrase . . . ordinarily modifies only the noun or phrase that it immediately follows." *State v. Khalil*, 956 N.W.2d 627, 635 (Minn. 2021) (quotation omitted). Borgquist maintains that, because the act of seeking medical assistance immediately follows the phrase "good faith," it is only the seeking of medical assistance (the 911 call) that must be made in good faith. He acknowledges that the other criteria—those set out in subparagraphs (1) and (2) of subdivision 1—must be satisfied, but argues that satisfaction is not to be judged according to an extrinsic good-faith standard.

The state supports the district court's conclusion and contends that the phrase "good faith" modifies not just the seeking of medical assistance, but also each of the criteria contained in subparagraphs (1) and (2) of subdivision 1, including the duty to cooperate.

11

The state thus argues that Borgquist's failure to immediately disclose information about intoxicants to first responders meant that he failed to satisfy the duty to cooperate.

We begin by interpreting the following phrase in the first sentence of the MGSA—"[a] person acting in good faith who seeks medical assistance." According to a dictionary definition, the word "seek" means "try to locate or discover." *The American Heritage Dictionary of the English Language* 1586 (5th ed. 2018) (defining seek); *see State v. Glover*, 952 N.W.2d 190, 193 (Minn. 2020) (noting we may use dictionary definitions to interpret undefined terms in a statute). Applying this definition, a person "seeks medical assistance" by trying to locate such assistance—i.e., the act of calling 911, flagging down a police squad, or similar action. Thus, Borgquist would have satisfied the requirement of seeking medical assistance by calling 911, assuming that the call was made in good faith.

As to the definition of the phrase "good faith," the supreme court has applied the definition from *Black's Law Dictionary* in recent cases involving a couple of different statutes: "The term "good faith" means "[a] state of mind consisting in (1) honesty in belief or purpose [or] (2) faithfulness to one's duty or obligation." *In re K.M.*, 940 N.W.2d 164, 171 (Minn. 2020) (quoting *J.E.B. v. Danks*, 785 N.W.2d 741, 749 (Minn. 2010), and *Good Faith, Black's Law Dictionary* (9th ed. 2009)). Of the two alternative definitions, we choose the first definition because it is a better match given the context of the sentence in which the phrase appears.

Reading the definitions of seek and good faith together, we interpret the phrase "[a] person acting in good faith who seeks medical assistance" as meaning a person acting with an honesty in belief or purpose who tries to locate medical assistance. Applying this

12

interpretation, we conclude that the district court imposed a duty that exceeded the requirements of the MGSA when it interpreted good faith as compelling immediate disclosure of all known or possibly known intoxicants ingested by the overdose victim. The district court thus erred in its application of the statute.

We turn next to the state's argument that the phrase "acting in good faith" modifies not only the seeking of medical assistance but also the duty to cooperate set out in subparagraph (2) of the second sentence of subdivision 1. Based on the structure of subdivision 1, we are persuaded that Borgquist's interpretation is correct and that the phrase "good faith" modifies only the seeking of medical assistance.

We reach this conclusion, first, because there is no reference to good faith in the second sentence of subdivision 1; it merely states that "[a] person qualifies for the immunities provided in this subdivision only if" the criteria set out in subparagraphs (1) and (2) are satisfied. Minn. Stat. § 604A.05, subd. 1.

Second, it is difficult to understand how the concept of good faith could even apply to five of the six criteria in subparagraphs (1) and (2). Those criteria involve objective, factual determinations: was the evidence for the charge or prosecution "obtained as a result of the person's seeking medical assistance"; was the medical assistance sought for a "person who is in need of medical assistance for an immediate health or safety concern"; was the defendant the first person to call; did the defendant provide their "name and contact information"; and did the defendant "remain[] on the scene." *Id.* The good faith of the defendant does not factor into the answers to these specific questions. For example, the defendant either provided his name and contact information or did not; the subjective good

13

faith of the defendant in providing a name and contact information is irrelevant. The only criterion where the concept of good faith could conceivably be applied is the duty to cooperate. But the rules of grammar and the plain language of the statute do not support a conclusion that the phrase "good faith," which appears in the first sentence of subdivision 1, should be read to modify the final criterion in subparagraph (2), but not the other criteria in the second sentence.

We therefore reject the state's proposed construction of the statute and conclude that the phrase "good faith" unambiguously modifies only the phrase "seeks medical assistance." Thus the criteria set out in subparagraphs (1) and (2) of subdivision 1, including the duty to "cooperate[] with the authorities," are to be judged objectively, independent of the subjective lens of whether the defendant was acting in good faith.

## DECISION

Subdivision 1 of the MGSA offers immunity from charging and prosecution for eligible persons and we affirm the district court's determination on this issue. Because we conclude that the district court erred in its interpretation of the MGSA, we reverse in part and remand this matter to the district court for further proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**