# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A25-0429

Brenda Thormodson, et al.,
Appellants,

vs.

Kathryn Rae Zehnder,
Respondent.

**Filed December 15, 2025**
**Affirmed**
**Cochran, Judge**

Watonwan County District Court
File No. 83-CV-24-80

Joseph A. Gangi, Daniel J. Bellig, Farrish Johnson Law Office, Chtd., Mankato, Minnesota (for appellants)

Ann R. Goering, Jordan H. Soderlind, Ratwik, Roszak & Maloney, P.A., St. Paul, Minnesota (for respondent)

Considered and decided by Ede, Presiding Judge; Frisch, Chief Judge; and Cochran, Judge.

## SYLLABUS

1.      Statutory immunity under Minnesota Statutes section 260E.34(a)(1) (2024), extends to a person who makes a mandated report under chapter 260E (2024), in good faith, even if the report is not made immediately.

2.      Statutory immunity under Minnesota Statutes section 260E.34(a)(1) extends to a person who makes a voluntary report under chapter 260E, in good faith, regardless of whether the person is also a mandatory reporter.

3.   Good faith, for the purpose of statutory immunity under section 260E.34(a)(1), is established if the report is made without an ulterior motive, without malice, and for a proper purpose.

**OPINION**

**COCHRAN**, Judge

Appellants sued respondent, a school paraprofessional, under Minnesota Statutes section 260E.08(d), alleging respondent knowingly or recklessly made a false report of child abuse or neglect against appellants.  The district court granted summary judgment in favor of respondent, determining she was statutorily immune from liability under Minnesota Statutes section 260E.34(a)(1) based on the undisputed facts.  Section 260E.34(a)(1) provides that a person "making a voluntary or mandated report under this chapter" is "immune from any civil or criminal liability that otherwise might result from the person's actions if the person is acting in good faith."  Because the undisputed facts establish that respondent made a report under chapter 260E in good faith, we conclude that the district court properly granted summary judgment in favor of respondent based on the plain language of section 260E.34(a)(1).  We therefore affirm.

**FACTS**

The following facts are drawn from the record at summary judgment and are framed in the light most favorable to appellants Brenda and John Thormodson as the nonmoving parties.[1]

The Thormodsons are the legal guardians of Brenda Thormodson's granddaughter, B.O., who was 17 years old during the relevant time period. B.O. has limited mobility and requires assistance with her daily activities, including bathing and toileting. Brenda Thormodson assisted B.O. with these activities at home. During the school day, B.O. was assisted by respondent Kathryn Rae Zehnder, who worked as a paraprofessional at B.O.'s school during the 2022-2023 school year.

On September 22, 2022, Zehnder contacted authorities to make a confidential report regarding B.O. Zehnder reported both by phone and in writing on a standard reporting form. The reporting form was captioned "Confidential Report of Suspected Child Abuse/Neglect." The form included a line for the nature and extent of "abuse/neglect." On that line, Zehnder indicated that she saw a "belt size bruise" on B.O.'s "bottom" on September 19. There was also a line requesting the name of the "Person alleged or suspected of abuse/neglect." Zehnder wrote, "Parents." The county human services

---

[1] *See Schroeder v. Simon*, 985 N.W.2d 529, 535-36 (Minn. 2023) ("In evaluating a grant of summary judgment, we must view the evidence in the light most favorable to the nonmoving party." (quotation omitted)).

3

agency with jurisdiction opened a family assessment on September 23.[2] This assessment was ultimately closed in November, following interviews with B.O. and John Thormodson.

After the assessment was closed, the Thormodsons sought, and the county inadvertently provided, the identity of the reporter.[3] The Thormodsons then filed a complaint against Zehnder asserting that Zehnder "knowingly made a false report of child abuse/neglect against Brenda and John Thormodson." According to the complaint, Zehnder made a report in which she alleged she saw bruising on B.O. caused by the Thormodsons but "none existed." The Thormodsons later filed an amended complaint again alleging that "Zehnder made a report of suspected child abuse/neglect" involving bruising and "that she suspected John Thormodson and/or Brenda Thormodson of committing the alleged child abuse/neglect against B.O." The amended complaint alleged that "Zehnder did not see any bruises or bruising on B.O." and "did not make her report for a proper purpose, as she knew the underlying factual statements supporting her report were false." The Thormodsons further alleged that Zehnder delayed reporting her suspicions for three days in an attempt to "hide [the report's] falsity." Based on these

---

[2] Zehnder contacted Watonwan County Human Services. The report was transferred to Brown County, where B.O. and the Thormodsons lived.

[3] The name of a reporter "shall" be confidential after a maltreatment assessment or investigation is completed. Minn. Stat. § 260E.35, subd. 3(m). A confidential reporter's name may be disclosed to the subject of the report only with the consent of the reporter "or upon a written finding by the court that the report was false and that there is evidence that the report was made in bad faith." *Id.* Here, Brenda Thormodson filed suit on behalf of B.O. against Brown County seeking to compel disclosure of the reporter's identity. Brenda Thormodson did not obtain consent or a court order to compel disclosure, but the Thormodsons saw Zehnder's name in discovery materials provided by Brown County due to an ineffective redaction.

allegations, the Thormodsons asserted that the report was "knowing[ly] or recklessly false" and that Zehnder "did not make her report in good faith, but in bad faith and with malice."

Following discovery, the Thormodsons moved for summary judgment. The Thormodsons argued that Zehnder knowingly made a false report of child abuse based on their contention that "Zehnder did not see, and could not have seen, [a bruise on B.O.'s body] because it is undisputed that no bruise existed." They also argued that Zehnder acted recklessly by not reporting immediately and by accusing the Thormodsons of causing bruising.

Zehnder filed a cross-motion for summary judgment. She argued that the undisputed evidence establishes that she acted in good faith when she made the report and "is immune by operation of statute." According to Zehnder, she was helping B.O. after a shower when she saw what she believed was a bruise on B.O.'s buttocks on September 19. Zehnder described the bruise as "a few inches" in length and approximately the width of a belt strap. Zehnder also testified in her deposition that, on September 20, the following day, she saw the bruise again while helping B.O. get dressed.

In her memorandum of law, Zehnder further argued that the Thormodsons failed to bring forth any evidence establishing that Zehnder knowingly or recklessly made the report in bad faith "beyond their own subjective beliefs and suspicions." Zehnder emphasized that the evidence shows that, as an educator, Zehnder had mandated-reporting duties as prescribed by chapter 260E. Zehnder sought advice from a colleague regarding whether she needed to file a report with authorities, but did not discuss the details of what she had observed. The colleague told Zehnder that she should report if she felt like she needed to

do so and suggested that Zehnder speak to the school counselor. On September 22, Zehnder sought advice from the school counselor about how to make a mandated report. The school counselor explained the process to Zehnder and provided her with a phone number and a written form. After receiving guidance from the school counselor, Zehnder called the designated authorities to make a verbal report and submitted the written form to the authorities that same day. Zehnder had not previously made a report to authorities as a mandatory reporter.

Following a hearing, the district court granted Zehnder's motion for summary judgment. The district court concluded that Zehnder was statutorily immune as a mandatory reporter under Minnesota Statutes section 260E.34(a)(1) because Zehnder "acted in accordance with the law mandating her to report any observations she made in regard to the welfare of the child." The district court further determined that the Thormodsons had not presented evidence giving rise to a genuine issue of material fact as to whether Zehnder acted in bad faith or recklessly and knowingly filed a false report. The district court emphasized that "[t]he law does not require that the reporter . . . be able to substantiate the concern or have directly witnessed an act of maltreatment before raising concern in the form of a report." The district court further noted that the Thormodsons' subjective beliefs that Zehnder acted in bad faith were "not enough to give rise to a genuine issue of material fact." Consequently, the district court granted summary judgment in favor of Zehnder and judgment was entered against the Thormodsons.

The Thormodsons appeal.

**ISSUES**

1.　　Does Minnesota Statutes section 260E.34(a)(1) extend immunity to a person who makes a report under chapter 260E, in good faith, even if the report is not made immediately?

2.　　Did the Thormodsons produce evidence that created a genuine issue of material fact as to whether Zehnder acted in good faith in making a report under chapter 260E?

**ANALYSIS**

Summary judgment is proper if the moving party shows, by citing to specific parts of the record, including depositions, documents, affidavits, admissions, and interrogatory answers, that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01, 56.03(a). "A genuine issue of material fact exists when there is sufficient evidence regarding an essential element [of a claim] to permit reasonable persons to draw different conclusions." *St. Paul Park Refin. Co. v. Domeier*, 950 N.W.2d 547, 549 (Minn. 2020) (quotation omitted). "[O]n a motion for summary judgment, the facts and the reasonable inferences to be drawn from those facts must be resolved in [the nonmoving party's] favor." *Staub v. Myrtle Lake Resort*, 964 N.W.2d 613, 620 (Minn. 2021) (emphasis omitted). "Any doubt as to whether issues of material fact exist is resolved in favor of the party against whom summary judgment was granted." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). On appeal, we "review [a] grant of summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court erred in its application of the law."

7

*Minnesota Laws. Mut. Ins. Co. v. Bradshaw & Bryant L. Off. PLLC*, 19 N.W.3d 206, 215 (Minn. App. 2025) (quotation omitted), *rev. denied* (Minn. June 17, 2025). "[W]e may affirm a grant of summary judgment if it can be sustained on any grounds." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 163 (Minn. 2012).

Before turning to our analysis, we begin with a summary of Minnesota Statutes chapter 260E, the Reporting of Maltreatment of Minors Act (RMMA). Minn. Stat. §§ 260E.01-.39 (2024).[4] The RMMA's purpose is "to protect children whose health or welfare may be jeopardized through maltreatment." Minn. Stat. § 260E.01. Maltreatment is defined to include neglect, physical abuse, "substantial child endangerment," "threatened injury," and "mental injury." Minn. Stat. § 260E.03, subd. 12. "The stated intention of the Legislature in enacting this provision" is to "protect children and promote child safety" and "make the home, school, and community safe for children by promoting responsible child care in all settings, including through the reporting of child maltreatment," among other purposes. *State v. Martens*, 18 N.W.3d 752, 758 (Minn. 2025) (quoting Minn. Stat. § 260E.01); *see also Radke*, 694 N.W.2d at 797 (noting that the express public policy of

---

[4] Prior to 2020, the RMMA was codified at Minnesota Statutes section 626.556 (2018), and was also referred to as the Child Abuse Reporting Act (CARA). *Compare Jepsen as Tr. for Dean v. County of Pope*, 966 N.W.2d 472, 475 (Minn. 2021) (referring to section 626.556 (2010) as RMMA), *with Radke v. County of Freeborn*, 694 N.W.2d 788, 790 (Minn. 2005) (referring to section 626.556 (2004) as CARA). In 2020, the legislature made several amendments and recodified the RMMA as chapter 260E. *See Jepsen*, 966 N.W.2d at 475 n.1 (citing 2020 Minn. Laws 1st Spec. Sess. ch. 2, art. 7, at 866, 1080, 1120). The prior version had an immunity provision that used the same operative language as the current version in the RMMA. Minn. Stat. § 626.556, subd. 4(a)(1) (2018) (stating that "any person making a voluntary or mandated report" was "immune from any civil or criminal liability that otherwise might result from their actions, if they [we]re acting in good faith").

Minn. Stat. § 626.556, the precursor to chapter 260E, was to protect "uniquely vulnerable persons" who cannot protect themselves).

The RMMA includes provisions covering both mandatory reporters and voluntary reporters. Mandatory reporters must "immediately" report maltreatment to designated authorities if they "know[] or ha[ve] reason to believe a child is being maltreated" or has been maltreated within the preceding three years. Minn. Stat. § 260E.06, subd. 1(a). Among those individuals who are mandated to report under the RMMA are professionals and their delegates "engaged in the practice of . . . education." *Id.*, subd. 1(a)(1). The RMMA also provides that "[a]ny person may voluntarily report" to designated authorities "if the person knows, has reason to believe, or suspects a child is being or has been maltreated." *Id.*, subd. 2.

A "report" is defined within the RMMA as "any communication received by the local welfare agency, police department, county sheriff, or agency responsible for child protection pursuant to this section that describes maltreatment of a child and contains sufficient content to identify the child and any person believed to be responsible for the maltreatment, if known." Minn. Stat. § 260E.03, subd. 19. Mandatory reporters who fail to report may be criminally liable under the RMMA, while both mandatory reporters and voluntary reporters may be civilly liable for knowingly or recklessly making a false report. Minn. Stat. § 260E.08(a), (d).

But reporters are statutorily immune from liability if they act in good faith. Minn. Stat. § 260E.34(a)(1). Specifically, the RMMA provides that "a person making a voluntary or mandated report under this chapter" is "immune from any civil or criminal liability that

9

otherwise might result from the person's actions if the person is acting in good faith." *Id.* In other words, the RMMA grants immunity from liability for reporting if two conditions are met: (1) the person makes a report under chapter 260E, and (2) the person does so in good faith. *Id.*

Returning to our analysis, the district court determined that Zehnder was entitled to summary judgment because section 260E.34(a)(1) granted immunity to Zehnder. On appeal, the Thormodsons advance two arguments for reversal. First, they contend that Zehnder is not immune under section 260E.34(a)(1) as a matter of law because Zehnder did not immediately report and therefore her report does not qualify as a mandated report "under this chapter" within the meaning of the immunity provision. Second, they assert that even if "Zehnder's untimely report does not foreclose immunity," there are genuine issues of material fact as to whether Zehnder acted in good faith when she made her report. We address each argument in turn.

## I. A person who makes a mandated report under chapter 260E in good faith is entitled to statutory immunity, even if the report is not made immediately.

The Thormodsons first argue that the immunity conferred under Minnesota Statutes section 260E.34(a)(1) to mandatory reporters extends only to mandatory reporters who make a report "immediately," which is defined by the RMMA to mean "as soon as possible but in no event longer than 24 hours." Minn. Stat. § 260E.03, subd. 9 (defining "immediately"); *see also* Minn. Stat. § 260E.06, subd. 1(a) (requiring mandatory reporters to "immediately report" information). This is an argument regarding the scope of the

statutory-immunity provision, which presents a question of law that appellate courts review de novo. *J.E.B. v. Danks*, 785 N.W.2d 741, 752 (Minn. 2010).

We reject the Thormodsons' argument regarding the scope of immunity for two reasons. We first conclude that, under the plain language of section 260E.34(a)(1), a mandatory reporter is immune from liability for a mandated report made in good faith to the proper authorities even if not made immediately. And second, we conclude that a mandatory reporter may make a voluntary report, which also triggers immunity under Minnesota Statutes section 260E.34(a)(1).

**A.      Section 260E.34(a)(1) extends statutory immunity to mandatory reporters even if they do not immediately make a report.**

The Thormodsons contend that Zehnder's failure to report her suspicions to authorities within 24 hours of first observing the bruise on B.O. precludes her report from being a "mandated report under [chapter 260E]" and consequently she is not statutorily immune from liability under Minnesota Statutes section 260E.34(a)(1).[5]  In response, Zehnder argues that this interpretation is contrary to the plain language of the statute and the "clear public purpose" of the RMMA, which is to protect children. We agree with Zehnder.

Resolution of this question requires us to interpret the statute. "[T]he overarching goal" of statutory interpretation is to "effectuate the Legislature's intent in enacting the

---

[5] The Thormodsons' argument regarding whether Zehnder's report qualifies as a "mandated report under this chapter" for purposes of section 260E.34(a)(1) is limited to their legal argument regarding the timing of the report. They raise no further arguments that Zehnder's report does not otherwise qualify as a "mandated report under this chapter." The only other argument raised relates to whether Zehnder acted in good faith.

11

statute." *328 Barry Ave., LLC v. Nolan Props. Grp., LLC*, 871 N.W.2d 745, 749 (Minn. 2015). "The plain language of the statute is our best guide to the Legislature's intent." *Rodriguez v. State Farm Mut. Auto. Ins. Co.*, 931 N.W.2d 632, 634 (Minn. 2019). Thus, "[i]f the meaning of the statute is clear, the plain language of the statute controls." *328 Barry*, 871 N.W.2d at 749.

The plain language of the immunity statute, section 260E.34(a)(1), provides in relevant part that, "a person making a voluntary or mandated report under this chapter" is immune from liability that might otherwise result from reporting if the person was "acting in good faith." Minn. Stat. § 260E.34(a)(1). The Thormodsons argue that the phrase "under this chapter" as used in section 260E.34(a)(1) should be construed narrowly to grant immunity to a mandatory reporter only when that person makes a report "immediately." In support of their argument, they note that mandatory reporters are required by section 260E.06(a) to report "immediately" to designated authorities if the reporter knows or has reason to believe a child is being maltreated. As noted above, the term "immediately" as used in chapter 260E means "as soon as possible but in no event longer than 24 hours." Minn. Stat. § 260E.03, subd. 9. The Thormodsons contend that if a mandated report is not made immediately, then the mandated report is not made "under this chapter" for purposes of section 260E.34(a)(1) and the reporter is not statutorily immune from liability for their actions. We are not persuaded.

The Thormodsons' argument focuses on the timing of a mandated report made under chapter 260E, not whether the mandated report itself was made "under this chapter." There is no language in section 260E.34(a)(1) that limits immunity for mandatory reporters

solely to mandated reports made "immediately." Rather, the language of section 260E.34(a)(1) provides a general grant of immunity to "a person making a voluntary or mandated report under this chapter" provided "the person is acting in good faith." Minn. Stat. § 260E.34(a)(1). The phrase "under this chapter" is not defined in chapter 260E, but the phrase has been interpreted broadly by the supreme court in other contexts to mean pursuant to the chapter. *See, e.g.*, *In re Civ. Commitment of Swope*, 26 N.W.3d 275, 281, 283, 285-86 (Minn. 2025) (holding that habeas corpus and mandamus petitions constituted proceedings under Minnesota Statutes chapter 253B for the purpose of the appointed-counsel statute; noting that dictionary definitions of "under" include, among others, "pursuant to," "subject to," or "required by"). And a report made to the proper authorities by a mandatory reporter who knows or has reason to believe a child is being maltreated is a report made pursuant to or subject to chapter 260E, even if it is not made immediately. We therefore conclude that the plain language of section 260E.34(a)(1) does not limit the RMMA's grant of immunity for mandated reports under chapter 260E to reports made within a specific period of time as argued by the Thormodsons.

To construe the statute otherwise and read a time limitation into it would be inconsistent with its plain language. If the legislature had intended to impose a time limitation on a reporter's eligibility to receive immunity, it would have included such language in section 260E.34(a)(1). It did not do so. And it is well-established that courts "cannot add language to a statute; rather, [they] must apply the plain language of the statute as written." *Firefighters Union Loc. 4725 v. City of Brainerd*, 934 N.W.2d 101, 109 (Minn. 2019) (quotation omitted); *see also Green Giant Co. v. Comm'r of Revenue*,

13

534 N.W.2d 710, 712 (Minn. 1995) ("We will not supply that which the legislature purposefully omits or inadvertently overlooks.").

Although not necessary to our plain-language analysis, we note that our interpretation is consistent with the purpose of the RMMA: "to protect children whose health or welfare may be jeopardized through maltreatment." Minn. Stat. § 260E.01. Our interpretation fulfills the underlying purpose of the statute by encouraging reports to "make the home, school, and community safe for children." *Id.*

Moreover, the facts here showcase the risk of reading a time limitation into section 260E.34(a)(1) for mandatory reporters. Zehnder testified at her deposition that, although she received training on the school's mandated-reporter policy, she had never before made a report under this policy. For that reason, Zehnder sought advice from an experienced colleague on September 19 about how to proceed after observing what she believed was a bruise on B.O. According to her colleague, Zehnder was "shook up" and asked if she needed to make a report. Zehnder's colleague did not know whether Zehnder's concerns rose to the level of requiring a mandated report and suggested that Zehnder speak with the school counselor. Zehnder sought out the school counselor but had difficulty locating her because the counselor "was out of [her] office a lot that week." Zehnder found the counselor on September 22 and discussed how to make a report. Zehnder then made a report the same day after receiving direction from the counselor. To deny statutory immunity to an individual making a report in this situation would be inconsistent with the purpose of the statute to encourage reporting to "protect children and promote child safety." *Id.*

14

We acknowledge the Minnesota Supreme Court's statement that "statutorily created immunity should be construed narrowly." *Bol v. Cole*, 561 N.W.2d 143, 147 (Minn. 1997). In *Bol*, the supreme court considered the breadth of statutory immunity under a previous version of the statute. *Id.* at 145-48. The mandatory reporter, a psychologist, reported an incident of suspected abuse to the appropriate reporting authority but then also shared the report with the child's mother. *Id.* at 145. The alleged abuser sued the reporter for defamation. *Id.* The version of the RMMA in effect at the time provided immunity from liability for reports made to the appropriate authorities of suspected child abuse if the reporter acted "in good faith." *Id.* at 147. The supreme court narrowly construed this grant of immunity to only those reports that complied with the statute. *Id.* Consequently, the supreme court concluded that, while a report made to "the local welfare agency, police department, or sheriff" was within the scope of the immunity provision, a report made to a child's parent was not. *Id.*; *see also J.E.B.*, 785 N.W.2d at 753 (reiterating the holding in *Bol* that the reporting statute did not grant immunity to reporters "who disclose potentially defamatory information to third parties").

*Bol* is distinguishable from the case presented here. *Bol* concerned a mandatory reporter's report to a third party. The supreme court's holding reinforced the principle that a reporter is immune for a report made to the proper authorities. *Bol*, 561 N.W.2d at 147. Here, it is uncontested that Zehnder made her report to the proper authorities, and there are no allegations that she disclosed confidential information to a third party. Zehnder acknowledged that she spoke with a colleague about whether to make a report. But Zehnder presented evidence demonstrating, and the Thormodsons do not contest, that she

15

did not discuss the details of her observations with this colleague. This undisputed fact distinguishes the present case from *Bol*, in which the reporter sought to expand immunity to include sharing confidential information with the child's parent, which was not protected under the reporting statute. *Id.* at 145, 147. Zehnder is not attempting to expand immunity here, as the reporter did in *Bol*. Rather, Zehnder is seeking immunity for making a report to the proper authorities. Given this factual distinction, *Bol* does not persuade us to reverse.

Based on the plain language of the statute, and consistent with the clear legislative intent to protect the most vulnerable members of society, we hold that statutory immunity under section 260E.34(a)(1) extends to a person who, in good faith, makes a mandated report under chapter 260E, even if the report is not made immediately. Accordingly, the district court did not err in determining that the timing of Zehnder's report did not foreclose summary judgment in favor of Zehnder as a person making a mandated report under chapter 260E.

**B.      The RMMA does not prohibit a mandatory reporter from making a voluntary report under the RMMA.**

Even assuming we were to agree with the Thormodsons' argument that Zehnder's report is not "a mandated report under [chapter 260E]" because it was not made immediately, we would still conclude that section 260E.34(a)(1) grants statutory immunity to Zehnder as a person making a voluntary report provided the undisputed facts show the report was made in good faith. This is because the plain language of section 260E.34(a)(1) grants immunity not just to persons making mandated reports but also to persons making voluntary reports under chapter 260E in good faith. Minn. Stat. § 260E.34(a)(1).

Voluntary reports under the RMMA are governed by section 260E.06, subdivision 2. That section provides that "*[a]ny person* may voluntarily report" to the proper authorities "if the person knows, has reason to believe, or suspects a child is being or has been maltreated." Minn. Stat. § 260E.06, subd. 2 (emphasis added). The voluntary-reporting provision, like the provision governing mandated reports, encompasses reports made when the "person knows" or "has reason to believe a child is being maltreated." *Id.*, subds. 1-2. The voluntary-reporting provision also encompasses reports made when the person "suspects" maltreatment of a child. *Compare id.*, subd. 1(a) (requiring reporting by a mandated reporter "who knows or has reason to believe" a child was maltreated), *with* subd. 2 (permitting a voluntary report by "[a]ny person" who "knows, has reason to believe, or suspects" maltreatment). Additionally, the provision governing voluntary reports *does not* require a report to be made "immediately" or include any time restriction. *Id.*, subd. 2.

Consequently, even assuming Zehnder's report is not "a mandated report under [chapter 260E]" because it was not made immediately, Zehnder's report qualifies as a voluntary report because she made the report to the proper authorities and a voluntary report may be made by "any person." *See id.*, subds. 1-2. There is no language in section 260E.06 precluding a mandatory reporter from making a voluntary report. *Id.* Similarly, nothing in section 260E.34(a)(1) precludes a mandatory reporter from receiving statutory immunity if the person makes a voluntary report under section 260E.06, subdivision 2. Minn. Stat. § 260E.34(a)(1). Rather, as discussed above, section 260E.34(a)(1) grants immunity to "a person making a voluntary or mandated report under this chapter" "if the person is acting in good faith." *Id.*

17

We therefore hold that statutory immunity under section 260E.34(a)(1) extends to a person who makes a voluntary report under chapter 260E, in good faith, regardless of whether the person is also a mandatory reporter. And, for the reasons discussed above, we conclude that there is no disputed issue of material fact that Zehnder made a "voluntary or mandated report" within the meaning of section 260E.34(a)(1). We next consider whether there is a disputed issue of material fact as to whether the report was made in good faith.

## II.    Good faith under the RMMA is established if a report is made without ulterior motive, without malice, and for a proper purpose.

The Thormodsons argue there are genuine issues of material fact regarding whether Zehnder acted "in good faith" when she made the report, requiring reversal of the grant of summary judgment. We disagree.

"A person making a voluntary or mandated report under" chapter 260E is "immune from any civil or criminal liability that otherwise might result" from making the report "if the person is acting in good faith." Minn. Stat. § 260E.34(a)(1). Zehnder bears the burden of showing that she is statutorily immune. *See J.E.B.*, 785 N.W.2d at 746 (providing that the party asserting immunity bears the burden of "establish[ing] all of the requisite facts" entitling the party to immunity).

The RMMA does not define "good faith." *See* Minn. Stat. § 260E.03 (providing definitions for purposes of chapter 260E). But, in *J.E.B.*, the supreme court interpreted the phrase "good faith" as used in a previous version of the RMMA. 785 N.W.2d at 745-46 (citing Minn. Stat. § 626.556 (2008)). Like the current version of the RMMA, the previous version granted immunity to a "person making a voluntary or mandated report" if the

18

person was "acting in good faith." *Compare* Minn. Stat. § 626.556, subd. 4 (cited in *J.E.B.*), *with* Minn. Stat. § 260E.34(a)(1). Because the current RMMA statutory-immunity provision uses the same operative language as the prior version, we turn to *J.E.B.* for guidance regarding the meaning of "good faith." *See* Minn. Stat. § 645.37 (2024) ("When a law is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing law, the earlier law shall be construed as continued in active operation."); *see also Mankato Citizens Tel. Co. v. Comm'r of Tax'n*, 145 N.W.2d 313, 317 (Minn. 1966) (noting that "a revision of an existing statute is presumed not to change its meaning, even if there be alterations in the phraseology, unless such intention to change the law clearly appears from the language of the revised statute" (quotation omitted)).

In *J.E.B.*, the supreme court considered the scope of the immunity provision and whether there was a genuine issue of material fact regarding whether a reporter acted in good faith when filing a report of suspected abuse to authorities. 785 N.W.2d at 750-51. The supreme court noted that the statutory scheme in the RMMA "protects a good faith reporter with statutory immunity . . . , while subjecting a malicious reporter who 'knowingly or recklessly makes a false report' to liability." *Id.* at 749. The supreme court emphasized that, "[g]enerally speaking, good faith is a matter of subjective intent." *Id.* To ascertain the meaning of the phrase "good faith" as used in the RMMA, the supreme court looked to *Black's Law Dictionary*, which defined "good faith" in part as "[a] state of mind consisting in (1) honesty in belief or purpose, [and] (2) faithfulness to one's duty or obligation." *Id.* (quoting *Black's Law Dictionary* 762 (9th ed. 2009)). And the supreme

19

court noted that courts from other states "have utilized this common understanding of 'good faith' when interpreting the requirement in the context of immunity under their states' child-abuse-reporting statutes." *Id.*

On this basis, the supreme court concluded that the "common understanding of 'good faith' should apply within the context of [the RMMA]." *Id.* at 750. And it explained that, "[u]nder this standard, the relevant question is whether the reporter honestly believed she had a duty to report." *Id.* at 749 (quotation omitted). Accordingly, "a report made without an ulterior motive, made without malice and made for a proper purpose would be a report made in good faith." *Id.* at 750. The supreme court further clarified that a reporter acting in good faith will be immune even if she is negligent or exercises bad judgment. *Id.*; *see also Rosati v. Pine County*, 460 F. Supp. 3d 846, 862 (D. Minn. 2020) ("Minnesota courts construe good faith liberally so as to encourage people to come forward with reports without fear of reprisal." (quotation omitted)).[6] But "filing a report that is knowingly or recklessly false will defeat a showing of good faith." *J.E.B.*, 785 N.W.2d at 749. Such a report necessarily is made with malice and without a proper purpose. *See id.* at 749-50; *see also Riley v. Jankowski*, 713 N.W.2d 379, 398 (Minn. App. 2006) (stating that malice includes defamatory statements made "with knowledge that the publication was false or with reckless disregard of whether it was false or not" (quotation omitted)), *rev. denied* (Minn. July 19, 2006).

---

[6] A federal decision interpreting Minnesota law is not binding precedent, but the decision may have persuasive value. *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 330 (Minn. 2000).

Because the current statutory-immunity provision in the RMMA includes the same "good faith" requirement as the prior version and maintains the same purpose of protecting reporters who make a good-faith report of suspected or known maltreatment, we conclude that the phrase "good faith" as used in section 260E.34(a)(1) has the same meaning as in the prior version at issue in *J.E.B.* Based on the supreme court's interpretation of the phrase "good faith" from *J.E.B.*, we hold that good faith, for the purpose of statutory immunity under section 260E.34(a)(1), is established if the report is made without an ulterior motive, without malice, and for a proper purpose. We next apply that holding to the facts of this case.

Our analysis of whether there is a genuine issue of material fact as to Zehnder's good faith when she made her report hinges on Zehnder's subjective purpose for making a report to the authorities after observing what she believed was a bruise on B.O. *See J.E.B.*, 785 N.W.2d at 749. Zehnder testified in her deposition that she made the report because she was "doing [her] job" and believed it was her responsibility to report signs of child abuse or neglect. She explained that she waited a few days to report because she had never filed a report before and wanted to be sure she was "doing the right thing." Zehnder's counsel asked her why she reported her observations, given that she did not know the cause of B.O.'s bruise. Zehnder responded, "I was worried about the child." Zehnder's testimony supports a determination that she acted in good faith because she "honestly believed she had a duty to report." *Id.* (quotation omitted).

Further, nothing in the record contradicts Zehnder's testimony that her motive was to fulfill her responsibilities and help the child. Zehnder's colleague testified that Zehnder

21

seemed "all shook up" when seeking advice. The school counselor described Zehnder as "worried," "nervous," and "unsure of . . . what steps she needed to take." The counselor stated that she did not believe Zehnder would make a false maltreatment report because she seemed "sincere and genuine" and the counselor did not "have any reason to believe that she was lying or made this up." We conclude that, for purposes of summary judgment, Zehnder adduced sufficient evidence to meet her burden of showing that she is statutorily immune.

The Thormodsons have not presented any evidence to demonstrate otherwise. The Thormodsons asserted in the amended complaint that Zehnder knowingly and recklessly made a false report alleging that B.O. had a bruise. But, following discovery, they failed to produce any evidence creating a genuine issue of material fact regarding whether Zehnder acted in good faith when she made the report, much less demonstrating that Zehnder made a knowingly or recklessly false report.

The Thormodsons admit that they have no evidence that Zehnder acted in bad faith, with malice, or for an improper purpose when she made the report. During John Thormodson's deposition, counsel asked him what evidence he had to support the contention that Zehnder acted in bad faith. John Thormodson could not identify any evidence, beyond his mere assertion that Zehnder must have been acting in bad faith because Brenda Thormodson told him B.O. did not have a bruise. John Thormodson conceded that he did not believe that the mandated report "specifically singled [him] out as causing the alleged harm to [B.O.]." Zehnder's counsel inquired, "On what basis do you claim that Ms. Zehnder acted with malice?" John Thormodson responded, "I would

22

figure that . . . she should have known by making that phone call [to the county] that somebody's lives were going to be affected out of it." Brenda Thormodson likewise failed to identify any evidence creating a genuine issue of material fact on the lack of good faith. Brenda Thormodson stated that she was not claiming that Zehnder had an "ulterior motive" in filing the report. She did not recall why the amended complaint accused Zehnder of acting with "malice." And Brenda Thormodson stated that there was nothing in particular that made her think Zehnder acted with bad intentions. Brenda Thormodson agreed that Zehnder did not "preplan" to submit a maltreatment report, and she did not dispute Zehnder's statement that Zehnder reported what she perceived as a bruise because she "didn't know what to do." Brenda Thormodson also did not dispute Zehnder's statement that she filed a report "based on concerns she ha[d] for [B.O.]."

Good faith is a subjective standard. *Id.* at 749. The Thormodsons' only evidence suggesting a lack of good faith are statements from Brenda Thormodson and B.O.'s aunt that they did not see a bruise on B.O. But these statements—even construed as true for the purposes of our de novo review—are insufficient to withstand summary judgment as to whether Zehnder acted in good faith. *See, e.g.*, *id.* (noting that a reporter is acting in good faith even if the reporter exercises bad judgment); *see also DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (stating that it is not sufficient for the nonmoving party to rely on "evidence which merely creates a metaphysical doubt as to a factual issue").

The Thormodsons failed to offer any evidence that Zehnder had an ulterior motive, acted with malice, or made her report for an improper purpose. *See J.E.B.*, 785 N.W.2d at 750. Indeed, John and Brenda Thormodsons' statements during their depositions—

23

acknowledging that they had no evidence that Zehnder acted in bad faith, with malice, or for an improper purpose—defeat their assertion to the contrary. Similarly, the Thormodsons have presented no evidence that Zehnder *knowingly or recklessly* made a false report or that she would have any reason to do so. Instead, they rely on mere speculation. On summary judgment, a party "may not simply rest on [their] pleadings, but must produce affirmative evidence to show an issue of material fact." *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 609 N.W.2d 868, 874 (Minn. 2000). "Mere speculation, without some concrete evidence, is not enough to avoid summary judgment." *Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn. 1993); *see also Gradjelick v. Hance*, 646 N.W.2d 225, 230 (Minn. 2002) (requiring more than "unverified and conclusory allegations"). In the absence of any evidence that supports the Thormodsons' accusation that Zehnder did not report in good faith but instead knowingly or recklessly made a false report, we agree with the district court that there are no genuine issues of material fact and Zehnder is entitled to summary judgment as a matter of law on the basis of statutory immunity. Accordingly, we conclude that the district court did not err by granting summary judgment in Zehnder's favor and we affirm.

## DECISION

Under section 260E.34(a)(1), statutory immunity extends to a person who makes a mandated report under chapter 260E, in good faith, even if the report is not made immediately. Statutory immunity under section 260E.34(a)(1) also extends to a person who makes a voluntary report under chapter 260E, in good faith, regardless of whether the person is also a mandatory reporter. Good faith is a subjective standard and is established

24

if a report is made without an ulterior motive, without malice, and for a proper purpose. Because the plain language of the immunity provision does not articulate a time restriction and the Thormodsons failed to present evidence to withstand summary judgment on the question of Zehnder's good-faith reporting, we conclude that the district court did not err by granting summary judgment in favor of Zehnder on the basis of statutory immunity and properly entered judgment against the Thormodsons.

**Affirmed.**